IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS


MICHAEL ANTONELLI                                                                            PLAINTIFF

V.                              CASE NO. 2:08-CV-00003-JMM/JJV

MARTHA DEPOORTER, ET AL.                                                        DEFENDANTS

ORDER

Plaintiff, formerly an inmate at the Federal Correctional Complex ("FCC") in Forrest City filed a *pro se* action pursuant to *Bivens v. Six Unknown Agents of Fed. Bureau of Narcotics,* 403 U.S. 388 (1971). The case began in 2006 with 27 known defendants and 10 Doe defendants. Through the grant of several motions for summary judgment, it had been reduced to a retaliation claim against two defendants - Martha Depoorter and Billy Phillips who are both employees of FCC.

A bench trial was held on July 26, 2011 before United States District Judge James M. Moody. At the close of Plaintiff's case in chief, all claims against Billy Phillips were dismissed.[1] Plaintiff's remaining claim was that he was subjected to retaliatory discipline on June 16, 2005, by Defendant Depoorter for exercising his constitutional right to submit grievances, assist other inmates in the preparation of grievance forms and for requesting investigations of official wrongdoing. Defendant Depoorter contended that on June 16, 2005 she filed an incident report stating that Plaintiff had refused her order and had been insolent toward her during a meeting held in her office.

---

[1] Plaintiff's oral motion to dismiss his claims against Billy Phillips was granted by written order on July 26, 2011.

1

*Findings of Fact*

1. Plaintiff was a federal inmate incarcerated at the Federal Correctional Institution, Forrest City, Arkansas from February 3, 2005 through May 15, 2006.

2. On May 16, 2005, Defendant DePoorter was employed as a counselor at the FCC.

3. Plaintiff was assigned to the unit where Defendant DePoorter was a counselor.

4. As a part of Defendant DePoorter's regular duties she prepared for a team docket review for Plaintiff.

5. In preparation for the review Defendant DePoorter reviewed the amount of funds which had passed through Plaintiff's inmate account during the prior six months.

6. Applying the formula supplied by the Bureau of Prisons, Defendant DePoorter discovered that Plaintiff would be required to make significantly higher payments in order to be in compliance with the Inmate Financial Responsibility Program.

7. Under this program inmates must enter into a contractual agreement with the Bureau of Prisons to permit an amount certain to be removed from their inmate account, either monthly or quarterly, or face sanctions.

8. On June 16, 2005 Defendant DePoorter called the Plaintiff into her office to discuss the required increase in payments.

9. When Defendant DePoorter advised Plaintiff of the required increase in payment, Plaintiff screamed at Defendant DePoorter, waved his arms, called Defendant DePoorter names and refused to terminate his tirade.

10. Plaintiff eventually left Defendant DePoorter's office but continued to walk around the unit loudly calling Defendant Depoorter names and yelling.

11. Defendant DePoorter called the Lieutenant's office for assistance.

12. Defendant DePoorter ordered Plaintiff to report to the Lieutenant's office.

13. Plaintiff walked toward his cell shouting "I'm getting my fucking shirt; you'll wait a minute."

14. Plaintiff then walked toward his cell continuing to yell loudly.

15. Corrections officers escorted Plaintiff to the Lieutenant's office.

16. Plaintiff was then placed in the Special Housing Unit.

17. On June 16, 2005, Defendant DePoorter filed an incident report which stated, in pertinent part;

> On 06-16-2005 at approximately 2:15p.m. Upon my explaining to inmate Antonelli, Michael #04053-164 how his financial responsibility contract was being re-formulated based on his deposits for the last six months, he immediately started yelling. "I ain't signing nothing" I explained that I was not asking him to sign anything right now, I just needed to know if he preferred monthly or quarterly payments to be made. He again started yelling with arm flailing stating "my money goes for legal expenses and if you had put me on the Unicor waiting list I'd have more money, I ain't making no FRP payments." I directed inmate Antonelli to stop yelling at which time I informed him that I would have to place him on FRP Refuse. He again started yelling saying "I don't care what you do, I only make 3.00 a month and it's your fault I don't make any money" and walked out of the office. I immediately called Lt. Bell informing him of inmate Antonelli's actions to which he replied to send him to the Lieutenant's office. I stepped out my office and ordered inmate Antonelli who was in the common area at this time to go to the Lieutenants's office. He returned to my office started waving his arms and yelling at me again. By this time several inmates had gathered outside my door and were watching. I looked up and ordered inmate Antonelli once again to go to the Lieutenant's office. He kept yelling in my direction something about Unicor. I ordered him a third time to go to the Lieutenant's office.

18. Following the filing of the incident report Defendant DePoorter had no involvement in any issue related to the June 16, 2005 incident.

19. As a result of the filing of the incident report and compliance with Bureau of Prisons that Plaintiff had violated Bureau Prisons code provisions 307, and 314, refused an order of any staff member and was insolent toward staff.

20. The Unit Disciplinary Committee at the June 20, 2005 hearing found that Plaintiff's punishment should be suspension of commissary and telephone privileges for 120 days.

21. Based upon the evidence at trial, and independent of the June 20, 2005 Unit Disciplinary Committee's finding, this Court finds that on June 16, 2005, Plaintiff violated Bureau of Prisons code provisions 307 and 314 by disobeying Defendant DePoorter's order and by being insolent toward Defendant DePoorter.

*Conclusions of Law*

A prisoner claiming that prison officials have retaliated against him for exercising his constitutional rights must prove that (1) the conduct in which he was engaged was constitutionally protected; (2) he suffered an adverse action at the hands of the defendant prison officials; and (3) his constitutionally protected conduct was the motivating factor in the decision of the defendant.  *See Haynes v. Stephenson*, 588 F.3d 1152, 1155 (8th Cir. 2009).

The prison official "may successfully defend a retaliatory discipline claim by submitting 'some evidence' establishing that the prisoner actually committed a rule violation."  *Williams v. Perry"* 2011 WL 1533425 (E.D. Ark. 2011) (citing *Bandy–Bey v. Crist*, 578 F.3d 763, 766 (8th Cir.2009); *Hartsfield v. Nichols*, 511 F.3d 826, 829 (8th Cir.2008)).

The Court finds that Plaintiff failed to establish a *prima facie* case that he was retaliated against because he failed to establish by a preponderance of the evidence that (1) his filing of grievances on his own behalf; (2) his helping other inmates file grievances on their own behalf; and (3) his request for investigations were the motivating factors in Defendant Depoorter's decision to file an incident report which led to Plaintiff's loss of privileges.

Defendant Depoorter has come forward with sufficient evidence to establish by either the preponderance of the evidence or by "some evidence" that she filed the June 16, 2005 incident report based upon Plaintiff's violation of prison rules.  The Court found Defendant Depoorter to be a credible witness.

This finding is based on the evidence presented at trial and the Court has not taken into consideration the decision of the Unit Disciplinary Committee hearing held on June 20, 2005.

*Conclusion*

The Court finds in favor of the Defendant and against the Plaintiff. Plaintiff's complaint against Defendant Depoorter is dismissed with prejudice. Judgment will be entered accordingly.

IT IS SO ORDERED THIS  27  day of July, 2011.

                                                                                                _____
                                                                                                James M. Moody
                                                                                                United States District Judge